UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK, etc.,

Plaintiff,

v. CASE NO. 8:09-CV-1841-T-17MAP

LARRY S. HYMAN, etc.,
et al.,

Defendants.

______________________/

ORDER

This cause is before the Court on:

Dkt. 195 Motion for Amended or Additional Findings and Motion for New Trial
Dkt. 196 Response

Defendants Kearney, Seeger and Harris move for amended or additional findings pursuant to Fed. R. Civ. P. 52(b), or for a new trial pursuant to Fed. R. Civ. P. 59(a), as to: 1) the set-off; 2) Kearney Guaranties; 3) maintenance obligations, 4) Pretrial Order (Dkt. 127) and 5) illegal recording.

Plaintiff responds that Defendants' Motion is due to be denied as an impermissible attempt to reargue Defendants' positions advanced prior to and at Trial, or that have been waived by Defendants.

I. Standard of Review

a) Motion to Amend the Judgment

A motion to amend the judgment seeks reconsideration and is an extraordinary remedy that should be used sparingly. American Association of People With Disabilities v. Hood, 278 F.Supp.2d 1337, 1339 (M.D. Fla. 1993). The decision to grant a motion for reconsideration is within the sound discretion of the trial court and will only be granted to correct an abuse of discretion. Region 8 Forest Serv. Timber Purchases Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993). There are three bases for reconsidering an order: " (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994). See also Lamar Adver. of Mobile, Inc. v. City of Lakeland, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

Furthermore, a motion for reconsideration does not provide an opportunity to simply reargue, or argue for the first time, an issue the Court has once determined. Court opinions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Quaker Alloy Casting Co. v. Gulfco Indus., Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1988). The reconsideration of a previous order is an "extraordinary remedy" and "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Ludwig v. Liberty Mutual Fire Ins. Co., 2005 WL 1053691 (citing Lamar, 189 F.R.D. at 489 (M.D. Fla. 1999)).

b) Motion for New Trial

A motion for new trial is governed by Fed. R. Civ. P. 59(a), and mat be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. Fed. R. Civ. P. 59(a)(1). The Supreme Court has held that a motion for new trial may rest on the fact that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of the alleged substantial errors in admission or rejection of evidence or instructions to the

jury." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

When considering a motion for new trial, the trial judgment may weigh the evidence, but it is proper to grant the motion only if the verdict is against the great, not just the greater weight of the evidence." Ard v. Sw. Forest Indus., 849 F.2d 517, 520 (11th Cir. 1988)(citing Watts v. Great Atl & Pac. Tea Co., Inc., 842 F.2d 307, 310 (11th Cir. 1988)). A new trial is warranted for evidentiary error "where the error has caused substantial prejudice to the affected party." Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004).

II. Discussion

A. Set-off

1. Pretrial Stipulation

In the Pretrial Stipulation, Plaintiff Regions Bank concedes that Borrower and Obligors are due a set off credit in an amount up to $2,500,000, an amount which Plaintiff Bank contends is in excess of the value of the Aircraft at the time of transfer, or such other amount as is determined to be the value of the Aircraft at the time of the Transfer, together with attorney's fees and costs. (Dkt. 126, p. 2, p. 11).

Plaintiff Regions Bank designated the following facts to be litigated: 1)The value of the Aircraft at the time of the Transfer; 2) Whether Defendants have any evidence that contravenes the Bank's valuation of the Aircraft or supports their defense of Set-off.

In the Pretrial Stipulation, Defendants assert that the value of the Aircraft exceeded any amounts owed at the time the Aircraft was turned back over to the Bank by assignment, and therefore Plaintiff is not entitled to any damages. ( Dkt. 126, p. 3).

Defendants designated as facts to be litigated: 1) Whether the actual value of the Aircraft exceeded any outstanding obligations and thus Defendants are released from liability; 2) Whether the Bank provided evidence establishing the fair market value of the Aircraft and if not whether Bank failed to prove its damages.

Based on the Pretrial Stipulation (Dkt. 126), the Court finds that the parties intended that the Court determine the fair market value of the collateral at the time of transfer to Plaintiff Regions Bank on September 22, 2010.

B. Disposition of Collateral

Plaintiff Regions Bank contended that since Plaintiff took ownership of the Aircraft, over its objection, pursuant to Sec. 727, Florida Statutes. Plaintiff Regions Bank argued that Plaintiff had no duty to the Guarantors as to the subsequent sale process; in other words, Sec. 679.610 Florida Statutes, (every aspect of disposition of collateral must be commercially reasonable) did not apply. Plaintiff acknowledged that Defendants were entitled to set-off credit for the value of the Aircraft on the Transfer date, September 22, 2010.

Defendants argued at length that the collateral was not disposed of in a commercially reasonable manner; Defendants argued for the application of Sec. 679.610, Florida Statutes. If the Transfer Date is the relevant date, the commercial reasonableness of the subsequent sale is not an issue which controls the Court's determination of the amount of the deficiency.

In this case, the secured party, Plaintiff Regions Bank, disposed of the collateral in a private sale after the collateral was returned to Plaintiff. Plaintiff Regions Bank did not repossess the collateral; with the approval of the Hillsborough County Circuit Court, the Aircraft was abandoned to Plaintiff Regions Bank and the title was transferred on September 22, 2010. The Court found that the Guarantors were "debtors" under

Article Nine of the UCC; given that Plaintiff Regions Bank possessed the collateral, the Court concluded that Sec. 679.610, Florida Statutes, applied. The only limitation on disposition of the collateral by a secured party is that every aspect of the sale must be commercially reasonable.

A debtor is liable for the deficiency after a secured party resells the collateral as a matter of law; the amount of the deficiency after the sale is a matter of fact. To establish entitlement to a deficiency judgment in a certain amount, a secured party must show its disposition of the collateral was commercially reasonable but resulted in a recovery which was less than the amount of the secured debt. Burley v. Gelco Corp., 976 So.2d 97 (Fla. 5th DCA 2008).

Defendants contended Plaintiff had caused the value of the collateral to deteriorate, and that the sale of the collateral was commercially unreasonable. Where a debtor puts the commercial reasonableness of a sale at issue, the secured party has the burden of establishing that every aspect of the sale was commercially reasonable. In the alternative, a debtor may concede that a sale was commercially unreasonable, introduce evidence to prove the fair market value at the time of repossession, and allow the debtor an additional credit for the difference between the fair market value and the amount obtained at the commercially unreasonable sale. Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362, 1364 (Fla. 1986).

The Court determined that the sale of the collateral was commercially reasonable. The presumption that the value of the collateral equaled the amount of the total debt that it secured did not arise. Instead of determining the amount of the deficiency by subtracting the fair market value on the Transfer Date from the amount of the total debt, the Court subtracted the amount obtained at the commercially reasonable sale from the total debt.

The Court found that the disposition of the collateral was subject to the statutory requirement of commercial reasonableness, as Defendants contended. The Court made a determination of the value of the Aircraft on the Transfer date, but did not grant a set-off credit for that amount; because the Court concluded that the sale was commercially reasonable, the Court determined the amount of the deficiency based on the amount recovered after the private sale. Either the Transfer Date is the relevant date, or the Sale Date is the relevant date, but both dates cannot control the Court's disposition.

In the Memorandum Opinion, the Court made a finding as to the amount of the total indebtedness, the value of the Aircraft on the Transfer Date, the amount recovered from the commercially reasonable sale, and the amount of the deficiency. After consideration, the Court **denies** the Motion for Amended or Additional Findings and Motion for New Trial as to this issue.

B. Kearney Guaranties

Defendants argue that the Court improperly accepted parol evidence on this issue, and improperly allowed testimony as to the parties' intent, despite the fact that the wording of the individual guaranties was not ambiguous.

Plaintiff responds that Defendants did not object to the Bank's exhibits or testimony prior to or at Trial. The Bank argues that the Court's consideration of parol evidence was not improper in determining which of two nearly identical unambiguous documents is the enforceable document, citing Ungerleider v. Gordon, 214 F.3d 1279 (11th Cir. 2000). The Bank argues that in this case the parol evidence, which was uncontraverted, did not contradict or rewrite the Loan Documents, but merely illuminated the Bank's and Kearney's intent as to the enforceable Kearney Guaranty.

After consideration, the Court **denies** the Motion for Amended or Additional Findings or Motion for New Trial as to this issue.

C. Maintenance obligations

Defendants argue that the Court found that Defendants were at all times responsible for the maintenance of the Aircraft, including after assigning the Aircraft to the Assignee.

In the context of the alleged commercial unreasonableness of the Bank's disposition of the Aircraft, the Court noted:

> As to the depreciation of the collateral and the performance of Maintenance after the Transfer, the ownership of the Aircraft was not transferred to the Bank until September 22, 2010. The Bank did not cause Defendants to default on payment of the Obligation, and did not cause Defendants to file an Assignment for benefit of creditors. The collateral was within the control and custody of Obligors until November 11, 2009, at which time various Maintenance obligations were overdue. After the Assignment was filed, the collateral was within the custody and control of the Assignee. The Assignee preserved the collateral in the condition it was in when the collateral was put within the Assignee's custody; the Assignee did not have the overdue Maintenance obligations performed due to lack of any resources.
>
> After the collateral was transferred to the Bank on September 22, 2010, the Bank had the condition of the Aircraft evaluated, as reflected in the Status Report......The Bank took the Aircraft as it was, not better and not worse. After considering all relevant circumstances, as noted in Ex. 102, the recommendation of the exclusive marketing agent for the Aircraft, the Bank elected to offer the Aircraft for sale in "As is Where is" condition. The Bank did not create or cause the uncertainties associated with the extended lack of Maintenance; the decision to offer the collateral for sale was a reasoned decision......

(Dkt. 176, p. 38).

The Court made other relevant findings, including those at Pars. 38, 48, 49, 52, 68.

After consideration, the Court **denies** the Motion for Amended or Additional Findings, or Motion for New Trial as to this issue.

D. Pretrial Order

Defendants argue that Judge Pizzo's Pretrial Order severely hampered Defendants' case, such that Defendants did not have an opportunity to present a full and fair defense. Defendants argue that, at a minimum, the Court should permit Defendants to proffer the testimony of the witnesses which were struck due to Defendants' non-compliance with previous court orders.

Plaintiff responds that Defendants did not raise this issue prior to trial, and did not seek specific relief from the Sanctions Order or the Kearney Strike Orders.

The Court provided additional trial time to the Parties to allow them to complete presentation of their respective cases. Defendants do not argue that the Pretrial Order was defective or not supported. Defendants made the strategic decisions they made before trial, and the result was entry of the Pretrial Order.

After consideration, the Court **denies** the Motion for Amended or Additional Findings and Motion for New Trial as to this issue.

E. Illegal recording

The ISDA Master Agreement includes the Schedule to the Master Agreement. (Exh. 12, p. 1). The Schedule provides:

**Part 4 Other Provisions**

......

**(c)** **Consent to Recording.** Each party and any of its Affiliates may electronically record any of its conversations with the other party or with any of the other party's Affiliates in connection with this Agreement or any Transaction (or any potential Transaction), and such recordings may be submitted in evidence in any proceeding to establish any matters pertinent to this Agreement or any Transaction (or any potential Transaction).

(Exh. 13, p. 18).

The ISDA Master Agreement provides:

> "**IN WITNESS WHEREOF** the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document."

(Ex. 12, p. 14). Defendant Kearney executed the ISDA Master Agreement on May 10, 2007. The date on the first page of the Agreement is May 8, 2007 (the effective date). (Ex. 12, p. 1). The telephone call was recorded on May 10, 2007.

The Court's Opinion states that the Swap Agreement provides for consent to recording, and that Defendant Kearney admitted no evidence nor identified any damage that could be linked to the Recording.

After consideration, the Court **denies** the Motion for Amended or Additional Findings and the Motion for New Trial as to this issue. According, it is

**ORDERED** that the Motion for Amended or Additional Findings, or Motion for New Trial (Dkt. 195) is **denied**.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 30th day of September, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record