UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK,

    Plaintiff,

v.                                    CASE NO. 8:09-cv-1841-T-17MAP

LARRY S. HYMAN, BING CHARLES
W. KEARNEY, JR., BRIAN SEEGER,
TRACY J. HARRIS, JR., and GREGORY
BENNETT,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Regions filed this action to enforce a note for the purchase of a Gulfstream jet and to enforce certain guarantees surrounding that note. The assignee to the note (Hyman; hereinafter, "Assignee") failed to defend and defaulted; the guarantors (Kearney, Seeger, and Harris; hereinafter, "Guarantors") denied liability. After a five-day bench trial, the district judge awarded damages against the Assignee (Count I) and against the Guarantors in amounts that corresponded to their respective guarantees (Count III) (docs. 176, 177).[1] Regions now moves for an order directing the Assignee and the Guarantors to pay its attorneys' fees and costs (doc. 263). The Guarantors, however, argue the motion should be denied because their operative guarantees (the "Amended Guarantees") limit their liabilities and do not provide for the payment of attorney fees (doc. 315).[2]

---

[1] The award against the Assignee amounted to $5,604,598.72. Seeger and Harris each guaranteed $638,968.75; Kearney guaranteed $3,407,620.35. *See* docs. 176, 177.

[2] I note that Regions did not file a bill of costs after the judgment issued. *See* Fed. R. Civ. P. 54(d)(1) (which plainly states that it is Clerk that taxes costs initially). In view of that omission and Regions's failure to correspond its costs to that limited by 28 U.S.C. § 1920, I

Having studied the relevant trial exhibits and considered the parties' arguments, I find the Amended Guarantees (Pl. Exs. 19, 21, 25), unlike their earlier iterations, failed to authorize the payment of attorney fees, a feature that Florida courts usually require. Accordingly, I recommend Regions's motion be denied as it pertains to the Guarantors. As for the Assignee, whose liability was dictated by the terms of a note that authorized the collection of attorney fees, I recommend the motion be granted.

   *A. Guarantors*

The "American Rule" is that each side bears its own attorneys' fees unless a statute or contract authorizes an award of fees to the prevailing party. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001) ("the American Rule"); *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) (citing *Graham v. Henegar*, 640 F.2d 732, 736 n. 9 (5th Cir. 1981)). Since no statute warrants the imposition of fees, Regions points to specific loan documents – the note and the earlier guarantees – all of which include attorney-fee clauses.[3] The Guarantors, on the other hand, focus on the Amended Guarantees which supplanted earlier guarantees. None of these operative guarantees carry such a provision; moreover, each limited the amount a Guarantor accepted as his risk. Because the judgment incorporates those figures, the Guarantors contend no more can be asked of them.

---

interpret Regions's motion for costs grounded on its reading of the loan documents and guarantees. In any event, the district judge referred Regions' motion (doc. 263) and the Guarantors' response (doc. 315) to me for a report and recommendation. *See* 28 U.S.C. § 636.

   [3] See Pl. Exs. 6, 7, 8, which are the original guarantees: "[t]he Guarantor further agrees to pay the Lender any and all costs, expenses and reasonable attorneys' fees paid or incurred by the Lender in collecting or endeavoring to collect the indebtedness of the Borrower or in enforcing or endeavoring to enforce the Guaranty."

All the Amended Guarantees (Pl. Exs. 19, 21, 25) are the same except for the identity of the Guarantor and the amounts he guaranteed.  Notably, all include a choice-of-law provision that says Florida law governs.  And the law in Florida for dealing with attorneys' fees for guarantees is clear-cut – "as a general rule, the guarantor is not liable for attorney's fees in an action on the guaranty absent a fee provision in that document."  *MSI Fin. Group, Inc. v. Veterans Constr. Corp.*, 645 So. 2d 178, 179 (Fla. 3d DCA 1994) citing *Kim v. Peoples Fed Sav. & Loan Ass'n. of Tarentum, Penn.*, 538 So. 2d. 867, 869 (Fla. 1st DCA 1989); *see also Sholkoff v. Boca Raton Cmty. Hosp., Inc.*  693 So. 2d 1114, 1118 (Fla. 4th DCA 1997) ("[T]he rule is that if an agreement for one party to pay another party's attorney's fees is to be enforced it must unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable.").  An exception to the general rule is if the language in the note is broad enough to cover a suit on a guaranty; if so, a plaintiff can then recover its fees.  *Riesterer v. Cadle Co., II*, 981 So. 2d. 644, 645 (Fla. 2d DCA 2008)(citing *Cacciatore v. Fisherman's Wharf Realty Ltd. P'ship*, 78 So. 2d 1076, 1077 (Fla. 4th DCA 2001).  But the guarantee's language is key: "The extent of the guarantor's liability depends upon the language of the guaranty itself."  *Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir. 1985) (applying Florida law).  A guaranty that is free from ambiguity, will be strictly construed in favor of the guarantor.  *Id.* (citing *Scott v. City of Tampa*, 158 Fla. 712, 714 (Fla. 1947).  And an ambiguous guaranty will be construed against the drafter.  *Id.*

Regions drafted all the guarantees.  None are ambiguous.  And none of the Amended Guarantees piggy-backs the terms of a previous guarantee; instead, the new one replaced the old one, thereby reflecting an arms-length bargain between Regions and a Guarantor.  In the original guarantees, for example, the Guarantors "absolutely and unconditionally guarante[ed] to the Lender

payment and collection in full of all sums due to Lender under and pursuant to the Note and the Loan Documents and all future advances indebtedness of [G3] owed to Lender whatsoever including, without limitation, all principal, interest, and expenses payable to Lender, whether at maturity or otherwise and the full performance of all obligations of [G3]." *See* Pl. Exs. 6, 7, 8. Those guarantees also required the Guarantors to pay Regions's attorneys fees. But the Amended Guarantees struck a different bargain. Instead of being on the hook for whatever G3 owed, each Guarantor limited his liability to the specified dollar amount the judgment reflects. And unlike before, none of the Guarantors agreed to pay Regions's attorneys fees. If Regions mistakenly excluded an attorney-fee provision from an Amended Guarantee or thought such a provision was presumed from previous documents, those missteps are Regions's consequences to bear.[4] Because Florida follows the rule that a guarantor is not liable for attorney's fees in an action on the guaranty absent a fee provision, I recommend Regions's motion be denied as to the Guarantors.[5]

*B. Assignee*

Unlike the Amended Guarantees, G3's loan note authorizes the payment of attorneys' fees:

---

[4] To the extent that Regions argues that the Amended Guarantees incorporated the attorney-fee provisions of the original loan documents, I find the argument unpersuasive. The Amended Guarantees significantly differ from the earlier guarantees. A typical rule of construction for interpreting contracts, and one that Florida courts employ, is expressed in the Latin maxim – "expressio unius est exclusio alterius" – the inclusion of one thing implies the exclusion of the other. *Mason v. Florida Sheriff's Self-Insurance Fund,* 699 So.2d 268, 270 (Fla. 5th DCA 1997). The inclusion of the attorney-fee provision in previous guarantees and its omission in the Amended Guarantees is a noteworthy circumstance.

[5] Regions also argues that the district judge specifically found that Regions was entitled to recover against each Guarantor not only up to the Amended Guaranties limitation but also adding interest and attorneys' fees and costs. Thus, Regions maintains to be consistent with the district judge's order, the Court must award attorneys' fees. I do not view the district judge's order as Regions interprets. The issue the Guarantors now present was not before the district judge.

"[a]ll parties liable for the payment of this Note agree to pay the Lender reasonable attorneys' fees and costs …. to collect this Note …" *See* Pl. Ex. 4.  This provision, plainly read, would include Regions's efforts through trial, judgment, and post-judgment.  The Assignee, who did not defend against the lawsuit, stands in G3's position.

Although the Assignee has defaulted and not responded to Regions's motion for fees, the Court remains obligated to assess the reasonableness of the fees requested.  *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (holding that even where there is a default judgment "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters."); *Natures Way Marine, LLC v. North America Materials, Inc.*, No. 08-0005-WS-B, 2008 WL177696, at *1 (S.D. Ala. Apr. 16, 2008) (stating even when there is a default judgment, the court has the obligation "not to award damages that are uncertain or speculative").  In fashioning an attorneys' fee award, both the Eleventh Circuit and the Florida Supreme Court apply the "lodestar" method wherein the court multiplies the number of hours reasonably expended by a reasonable hourly rate.  *Norman*, 836 F.2d at 1292; *Fla. Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1150 (Fla. 1985) (adopting the federal lodestar approach).  A "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman*, 836 F.2d at 1299; *see Rowe*, 472 So.2d 1151 (finding the prevailing market rate is "the rate charged in the community by lawyers of reasonably comparable skill, experience and reputation, for similar services.").

Applying these principles, I find Regions's attorneys billed at a reasonable rate.  Determining the reasonableness of its fees is another matter.  In fact, I find Regions's fee petition woefully inadequate.  In support of its petition, Regions submitted its billing records covering a period from


September 9, 2009 to October 2, 2012, without any breakdown of the total fees incurred by each attorney. Although the Court acknowledges that Regions at least attempted to break down its hours by task, it is not this Court's duty to sift through the numerous entries on the 157 pages of billing entries to determine the number of hours billed by each attorney on those tasks. *See Franklin v. Hartford*, No. 8:07-cv-1400-T-23MAP, at *2 (M.D. Fla. Mar. 10, 2010). Furthermore, the combination of redactions, block billing, and poor descriptions of time entries in those records makes it extremely difficult for the Court to determine whether Regions's attorneys spent a reasonable amount of time on any particular task. Nonetheless, I find that the hours their counsel billed were reasonable for the tasks identified in their application (*see* doc. 263 at ¶ 19) but for those fees charged for preparing a fee petition, preparing and attending the pre-trial conference, and for those incurred in "post-trial efforts." *Id.*

Florida follows the principle that "fees for fees" may be awarded if authorized by statute, and then only if the statute's purpose is encourage attorneys to represent indigent clients. One exception to this rule is if a specific contractual provision authorizes as much. *Mediplex Constr. of Florida, Inc. Schaub*, 856 So.2d 13, 15 (Fla. 4th DCA 2003). None of the applicable loan documents covers such costs; accordingly, I exclude those fees spent for preparing the fee petition ($5,294.50).[6]

Additionally, as I informed the parties at the evidentiary hearing on this matter, I will exclude all hours counsel spent preparing for and attending the pre-trial conferences in this matter ($4,205.00). The Court finds the hours allocated to the pre-trial conferences were essentially wasted efforts largely due to the inability of the parties' counsel to follow the Court's orders.

Lastly, Regions identifies 125.9 hours spent in "post-trial efforts." *See* doc. 263 at ¶ 19.

---

[6] *See* doc. 263 at ¶ 19.

Regions notably fails to identify what these efforts included. Regions spent considerable resources attempting to garnish bank accounts held by the Guarantors; writs that I recommended be dismissed (doc. 382) (Regions's objections to my report and recommendation are still pending (doc. 384)). I find the fees Regions expended in the garnishment efforts unreasonable. In short, Regions multiplied the complexity of the proceedings by failing to abide by Florida's garnishment scheme and is now asking to be compensated for its unsuccessful effort. Moreover, it cites no legal authority for such a proposition. Regions's only other conceivable "post-trial effort" would seemingly include responding to the Guarantors' motion for amended or additional findings and motion for new trial (docs. 195, 196). On face value, I find that task within the confines of the attorney-fee provisions. But the hours Regions expended in that effort could not reasonably total 125.9 hours. Because I cannot determine the time Regions's spent on the response, I substitute my own judgment and award Regions $1,500 in "post-trial efforts."[7] As a result of all this, I find a reasonable fee award to be $298,440.16.[8]

*C. Costs*

Regions seeks reimbursement of $42,042.08 for costs that include copying, postage and handling, filing and clerk fees, conference calls/rooms, telephone and facsimile charges, process service, and court reporting fees. Taxation of costs in the district courts is governed by federal law, even where the district court's jurisdiction is premised on diversity of citizenship. *See Humann v. KEM Elec. Co-op., Inc.*, 497 F.3d 810, 813 (8th Cir. 2007); *Gobbo Farms & Orchards v. Poole*

---

[7] I note that Regions filed the response the day after the Guarantors filed their motion. I attribute 6 hours to prepare the response at a rate of $250 an hour.

[8] This amount also subtracts the credit given to Regions as a preferred client by Region's attorneys in the amount of $49,465.84.

*Chemical Co., Inc.*, 81 F.3d 122, 123 (10th Cir. 1996). Despite the fact that 28 U.S.C. § 1920 allows the Court or the Clerk to tax costs, Fed. R. Civ. P. 54(d)(1) makes plain the Clerk taxes initially.[9] Commentators have observed "[t]he function of the court [pursuant to Rule 54(d)(1)] in the process of taxing costs is merely to review the determination of the clerk. Therefore, nothing normally can come before the court until the clerk has acted and an objection has been made." 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2679 (3d ed. 1998); *accord Sharon v. Yellow Freight Sys., Inc.*, 985 F. Supp. 1274, 1275 (D. Kan. 1997) (the clerk taxes the costs). A "motion to tax costs" runs counter to Rule 54(d)(1), insofar as a "motion" is "[a]n application *to the court* for an order." FED. R. CIV. P. 7(b) (emphasis added). Admittedly, Local Rule 4.18, supports the filing of a motion ("all claims for costs or attorney's fees ... shall be asserted by separate motion or petition filed not later than fourteen (14) days following the entry of judgment"). Regardless, because Local Rule 4.18 conflicts with Rule 54, Rule 54 controls. *See* Fed.

---

[9] Section 1920 provides as follows:

A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Rule 54(d)(1), on the other hand, states:

Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . . Such costs may be taxed *by the clerk* on one day's notice. On motion served within five days thereafter, *the action of the clerk* may be reviewed by the court.

R. Civ. P. 83(a)(1) (Local Rules are to be consistent Federal Rules of Civil Procedure).

This means that the proper procedure was for Regions, as a prevailing party, to file a verified bill of costs with the Clerk within the time allowed by the local rules (i.e. 14 days from the date of judgment). *See* M.D. Fla. R. 4.18. Regions failed to do so; thus, I find its costs are not compensable. *See Envtl. Biotech, Inc. v. Sibbitt Enterprises*, No.2:03-cv-124-FTM-33SPC, 2009 WL 1653563, at *3 (M.D. Fla. Jun. 10, 2009) (denying motion for attorneys' fees and costs as untimely filed); *Sanders v. Drainfield Doctor, Inc.*, No.6:06-cv-1216-ORL-28GJK, 2009 WL 667158, at *5 (Mar. 13, 2009) (denying motion for attorneys' fees and costs as untimely filed for being three days late); *Stanford v. Burlington Motor Carriers*, 74 F. Supp. 2d 1155, 1157 (M.D. Ala. Jun. 11, 1999) (striking plaintiff's bill of costs for failure to file timely under the local rules); *Johnson v. Mortham*, 173 F.R.D. 313, 321 (N.D. Fla. 1997) ("Failure to strictly comply with the time and filing requirements by parties seeking taxable costs may result in disallowance of some or all of those costs."). Accordingly, it is hereby

RECOMMENDED:

1. Regions's amended motion for attorneys' fees (doc. 263) be GRANTED in part such that Regions be awarded fees from the Assignee in the amount of $298,440.16 as set forth herein.

2. Regions's amended motion for attorneys' fees as to the Guarantors be DENIED.

3. Regions's motion for costs be DENIED.

IT IS SO REPORTED in chambers on this 29th day of January, 2014.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).